## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TRIUMPH DESIGNS, LTD.,<br><br>    PLAINTIFF,<br><br>V.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>    DEFENDANTS. | CASE NO.: 1:22-CV-00506 |

## AMENDED COMPLAINT

Plaintiff, Triumph Designs, Ltd. ("Triumph" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and using the identified online marketplace accounts (collectively, the "Defendant Internet Stores" or "Seller Aliases"), and for its Complaint hereby alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving

1

rise to this lawsuit, of which each Defendant stands accused, were undertaken in Illinois and within this Judicial District.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since each Defendant directly targets consumers in the United States, including Illinois, through the fully interactive, commercial Internet stores operating under the Defendant Seller Aliases and/or the Defendant Internet Stores identified in Schedule A. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold, and continues to sell infringing and counterfeit products that infringe upon Plaintiff's trademarks. Each Defendant is committing tortious acts, is engaging in interstate commerce, and has wrongfully caused substantial injury in the State of Illinois.

## INTRODUCTION

4.     This action has been filed to combat the online trademark infringement and counterfeiting of Defendants, who trade upon Plaintiff's valuable trademarks by selling and/or offering for sale unauthorized, inauthentic, infringing, and counterfeit products in connection with Plaintiff's federally registered trademarks.

5.     Plaintiff, Triumph Designs, Ltd., is the owner of the federally registered Triumph Trademarks, listed in the table below, and true and correct copies of which are attached hereto as Exhibit 1 (collectively referred to as the "Triumph Trademarks" and "Trademark Registrations"). The Trademark Registrations of the Triumph Trademarks are valid, subsisting, and in full force and effect. The Trademark Registrations of the Triumph Trademarks constitute *prima facie* evidence of their validity and of Triumph's exclusive right to use the Triumph Trademarks pursuant to 15 U.S.C. § 1057(b).

| TRADEMARK REGISTRATIONS | | | |
|---|---|---|---|
| REG. NO. | WORD/DESIGN MARK | CLASS(ES) | REG. DATE |
| 2,115,041 | BONNEVILLE | For: parts of motorcycles, namely, motors and engines, frames, drive gears, transmission gears, steering gears and gear changers, wheels, clutches and clutch components, namely, clutch levers, clutch housings, clutch disks, clutch rings, clutch plates, clutch sleeves, and clutch toggles, tires, saddles, sus- pension systems, namely, shock absorbers, and forks, drive chains, drive shafts, drive components, namely, drive sprockets and drive wheels, handlebars, grips, brakes, and braking systems, namely, brake pads, brake pistons, brake calipers, brake discs, brake levers, and brake lines, fuel tanks, and fuel supply systems consisting primarily of fuel transfer lines, gas tank caps, ignition switches, throttles, exhaust pipes, fuel indicators, and fuel injectors, in class 12 | Nov. 25, 1997 |
| 2,359,174 | BONNEVILLE | For: motorcycles; parts of motor- cycles, namely, motors and engines, frames, drive gears, transmission gears, steering gears and gear changers, wheels, clutches and clutch components, namely clutch levers, clutch housings, clutch disks, clutch rings, clutch plates, clutch sleeves, and clutch toggles, tires, saddles, suspension systems, namely, shock absorbers, and forks, drive chains, drive shafts, drive components namely, drive sprockets and drive wheels, handlebars, grips, brakes, and braking systems, namely, brake pads, brake pistons, brake calipers, brake discs, brake levers, and brake lines, fuel tanks, and fuel supply systems consisting primarily of fuel transfer lines; gas tank caps, ignition switches, throttles, exhaust pipes, fuel indicators, and fuel injectors, in class 12 | Jun. 20, 2000 |
| 5,309,264 | BONNEVILLE BOBBER | Class 12: motorcycles; mopeds; scooters; vehicles; bicycles; e-bikes; e-bicycles; quadbikes; parts, accessories, and fittings for all of the aforesaid goods | Oct. 17, 2017 |
| 5,516,233 | SPEED TRIPLE | Class 12: motorcycles and parts therefor; all included in this class | Jul. 17, 2018 |
| 5,061,608 | SPEED TWIN | Class 12: motorcycles and parts and structural parts therefor | Oct. 18, 2016 |
| 4,792,704 | STREET TRACKER | For: land vehicles, namely, motorcycles, mopeds, scooters, and powered two-wheeled vehicles, namely, e-bikes, luggage racks adapted specifically for motorcycles, mopeds, scooters, and powered two-wheeled vehicles, namely, e-bikes; anti-theft alarm devices for motorcycles and land vehicles; stands for holding motorcycles upright, not being structures; tires; parts and fittings for all of the aforesaid goods, in class 12 | Aug. 18, 2015 |
| 5,521,754 | STREET TRIPLE | Class 12: motorcycles; mopeds; scooters; bicycles; e-bikes; e-bicycles; powered two- wheeled vehicles; tricycles; quad bikes; parts and fittings for all the aforesaid goods | Jul. 24, 2018 |
| 5,521,755 | STREET TWIN | Class 12: motorcycles; mopeds; scooters; bicycles; e-bikes; e-bicycles; powered two- wheeled vehicles; tricycles; quad bikes; parts and fittings for all the aforesaid goods | Jul. 24, 2018 |
| 1,939,115 | THUNDERBIRD | For: motorcycles and structural parts therefore, in class 12 | Dec. 5, 1995 |

3

| Reg. No. | Word/Design Mark | Class(es) | Reg. Date |
|---|---|---|---|
| 4,626,629 | **TRIDENT** | For: land vehicles; sports utility vehicles; side by side vehicles; motor- cycles; mopeds; scooters; tricycles; bicycles; powered 2-wheeled vehicles; and structural parts for land vehicles, in class 12 | Oct. 28, 2014 |
| 5,435,714 | **TRIUMPH SCRAMBLER** | Class 12: motorcycles and parts and fittings for motorcycles | Apr. 03, 2018 |
| 5,483,141 | **TIGER** | Class 12: motorcycles; mopeds; motor scooters; powered two-wheeled motor vehicles; luggage racks for vehicles, for motorcycles, mopeds, motor scooters and bicycles; security alarm devices for motorcycles and land vehicles; structural replacement parts and fittings for all of the aforesaid goods; none being tires or inner tubes for wheels, or treads for vehicles, and all being for two-wheeled vehicles | Jun. 05, 2018 |
| 5,864,899 |  | Class 16: printed matter in the nature of magazines, manuals, handbooks, catalogs, and brochures, all in the field of motorcycles, motor vehicles, and motorcycle accessories and parts; periodical publications, namely, printed periodicals in the field of motorcycles, motor vehicles, and motorcycle accessories and parts; books in the field of motorcycles, motor vehicles, and motorcycle accessories and parts; manuals in the field of motorcycles, motor vehicles, and motorcycle accessories and parts; calendars; postcards; posters; pictures; photographs; photograph albums; cheque book covers; binders; document files; paper banners; stickers; decalcomanias; temporary tattoo transfers; atlases; stationery<br><br>Class 25: clothing, namely, jeans, shirts, jackets, pants, shorts, gloves, scarves, socks, ties, sweaters, sweatshirts, track suits, and thermal base layers, footwear, and headwear | Sep. 24, 2019 |
| 5,435,713 | **TRIDENT** | Class 12: motorcycles; mopeds; scooters; bicycles; e-bikes; e-bicycles; powered two- wheeled vehicles; tricycles; quad bikes; land vehicles; parts and fittings for all the aforesaid goods | Apr. 03, 2018 |
| 5,483,267 | **TROPHY** | Class 12: motorcycles; body panels for motorcycles | Jun. 05, 2018 |
| 5,505,573 | **TRIUMPH DAYTONA** | Class 12: motorcycles and parts thereof; all included in this class | Jul. 03, 2018 |
| 2,091,751 |  | For: watch chains; ornamental badge pins in the nature of jewelry; watches and bands therefor; and chronographs for use as watches, in class 14<br><br>For: luggage, namely, garment bags for travel, back packs, and attached cases, in class 18<br><br>For: clothing, namely, jeans, jackets, salopettes, gloves and boots, all of leather; rainwear, namely, oversuits, salopettes and jackets; and cloth overalls, jackets, denim jeans, t-shirts, and sports shirts , in class 25 | Aug. 26, 1997 |
| 2,571,967 | **TRIUMPH** | For: toy model motorcycles and related accessories sold as a unit; toy motorcycles in class 28 | May 21, 2002 |

| Reg. No. | Word/Design Mark | Class(es) | Reg. Date |
|---|---|---|---|
| 6,241,969 | MY TRIUMPH | Class 9: downloadable computer software applications for control of motorcycle navigation, providing navigation and map information in the form of digital maps, and allowing users to search and determine the location of objects, people, places and points of interests on digital maps; downloadable computer software for control of motorcycle navigation, providing navigation and map information in the form of digital maps, and allowing users to search and determine the location of objects, people, places and points of interests on digital maps; satellite navigation apparatus and instruments for vehicles; gps navigation or location apparatus and instruments; route planners in the nature of handheld personal computers; holders specially adapted for route planners in the nature of handheld personal computers; vehicle tracking apparatus and instruments; signaling apparatus and instruments, namely, vehicle traffic signals; blank magnetic data carriers; alarm apparatus and instruments, namely, parts for anti-theft motorcycle alarms, in the nature of electronic sensors, remote control transmitters and receivers for remotely operating motorcycles; parts and fittings for all of the aforesaid goods | Jan. 12, 2021 |
| 2,059,661 | TRIUMPH | For: motorcycle engines and parts therefor, namely, pistons, cam shafts, cylinder heads, crank cases, carburetors, valves, radiators, crank shafts, oil pumps, starter motors, fans, pipes and cylinder bearings, alternators, ignition rotors, ignition coils, igniters, and spark plugs, in class 7<br><br>For: electrical parts and instruments for motorcycles, namely, switches for controlling the electrical accessories of the motorcycle; relays, tachometers, thermometers, speedometers, and electrical wiring harnesses and sub harnesses, in class 9<br><br>For: motorcycle headlamp covers; vehicle reflectors for motorcycles, in class 11<br><br>For: motorcycles and parts therefor, namely, windscreens, luggage carriers, seats, handlebars, side panels, forks, yokes, frames, fuel tanks, tires, inner tubes for tires, grips, springs, brackets, non-electric cables, axle bearings, wheel bearings, kickstands, chains, chain guards, sprockets, and other structural parts, in class 12<br><br>For: rubber and plastic parts for motorcycles, namely, gaskets, washers, and o rings; rubber and plastic hoses for use in motorcycles, in class 17 | May 6, 1997 |
| 5,029,574 | TRIUMPH | Class 9: articles of protective clothing for protection against accident or injury for use in motorcycling and dirt-biking; motorcycle helmets; sunglasses; sunglass cases<br><br>Class 25: clothing, namely, footwear, headwear, namely, jeans, t-shirts, shirts, blouses, jackets, trousers, shorts, caps, hats, gloves, scarves, socks, ties, jumpers, cardigans, sweaters, sweatshirts, track suits, thermal base layers, shoes, boots, sports shoes; not including underwear, foundation garments, swimwear or nightwear | Aug. 30, 2016 |
| 6,014,143 | TRIUMPH | Class 14: watches; cufflinks; key rings; decorative key fobs; badges of precious metal; articles made of precious metal or coated therewith, namely, lapel badges, statues and sculptures; pins<br><br>Class 18: luggage; umbrellas; briefcases; key cases; back packs; rucksacks; handbags; travelling bags; leather bags; weekend bags; duffel bags; carry-on bags; tote bags; wallets and purses | Mar. 17, 2020 |

5

| Reg. No. | Word/Design Mark | Class(es) | Reg. Date |
|---|---|---|---|
| 6,481,285 | **TRIUMPH** | G & S: bicycles; e-bikes; e-bicycles; powered two-wheeled vehicles, namely, motorcycles; tricycles; quad bikes; structural parts for all the aforesaid goods | Sept. 14, 2021 |
| 5,362,191 |  | Class 9: Articles of protective clothing for protection against accident or injury for use in motorcycling, dirt-biking, bicycling and e-biking; safety helmets; protective gloves for the prevention of accident or injury and protective footwear for the prevention of accident or injury; steel capped boots being protective footwear for the prevention of accident or injury; safety goggles; eyeshades, namely, eye covers for protective purposes; motorcycle helmet visors; spectacles; sunglasses; cases for spectacles and sunglasses; electrical switches for controlling electrical accessories for motorcycles, mopeds, scooters, powered two-wheeled vehicles and other vehicles; batteries; battery chargers; radios; receivers of radio signals, namely, radio receivers; aerials; blank video tapes and audio tapes; blank recordable compact discs; blank recordable DVDs; photographic apparatus and instruments, namely, cameras; telephones; electric relays; tachometers; thermometers not for medical purposes; speedometers; starters for motors and engines; electrical wiring, electrical wires; electrical adapters; electrical locks; fire extinguishing apparatus; structural parts and fittings for all of the aforesaid goods<br><br>Class 12: Motorcycles; mopeds; motor scooters; motor powered two-wheeled vehicles; electric bicycles; human powered 2-wheeled vehicles, namely, bicycles; land vehicles; luggage racks for motor cars, motorcycles, motor scooters and motor powered two-wheeled vehicles; antitheft alarm devices for motorcycles, mopeds, motor scooters, motor powered two-wheeled vehicles and other land vehicles in the nature of motorcycles; metal stands for holding stationary motorcycles, mopeds, motor scooters and motor powered two-wheeled vehicles; tires for vehicle wheels; electrical heated handlebar grips for motorcycles, mopeds, motor scooters and motor powered two-wheeled vehicles; structural parts and fittings for all of the aforesaid goods<br><br>Class 25: Clothing, namely, jeans, t-shirts, shirts, blouses, jackets, trousers, shorts, caps, hats, gloves, scarves, socks, ties, jumpers, cardigans, sweaters, sweatshirts, track suits, thermal base layers in the nature of thermal underwear; footwear, namely, shoes, boots, sports shoes; headwear | Dec. 26, 2017 |

6.     In an effort to illegally and deceptively profit from the Triumph Trademarks, Defendants created numerous online marketplace accounts and online stores, intentionally designed in look, feeling, and suggestion to give the impression to consumers that they are legitimate websites and merchants selling products manufactured by or authorized by Triumph (the "Triumph Products"), with Defendants' ultimate intention being to deceive unknowing consumers into purchasing unauthorized and infringing Triumph Products (hereinafter referred to as "Counterfeit Triumph Products" or "Counterfeit Products").

6

7.     Defendant Internet Stores share numerous unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between Defendants, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation.

8.     Plaintiff is forced to file this action to combat Defendants' ongoing infringement of Plaintiff's Triumph Trademarks (also referred to as "Triumph Intellectual Property" or "Triumph IP"). Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over the creative content, and tarnishment of its valuable trademarks as a result of Defendants' actions and is thus seeking injunctive and monetary relief.

## THE PLAINTIFF

9.     Founded in 1983, and based in Hinckley, England, Triumph is a The company's origins date back to as early as 1883, when Siegfried Bettmann began making bicycles after immigrating to England from Germany. In 1902, the first Triumph motorcycle was produced in Coventry, England by Triumph Cycle Co. Ltd.. By the mid-1920s, Triumph had become one of Great Britain's leading motorcycle makers, and found its bikes in high demand overseas. From there, the United States became the primary source of the company's revenues.

10.     One of the oldest names in motorcycle manufacturing, Triumph Motorcycles Ltd. is also one of the youngest--while the first Triumph motorcycle was born in 1902, in its present incarnation the company as Triumph Designs, Ltd. has only been in production since 1990. Triumph is currently based in Hinckley, England. The company is known for not only the durability of their bikes but for the stylish design that sets them apart from competitors.

11.     Triumph is in the business of developing, manufacturing, marketing, and licensing all Triumph Products. The following are examples of genuine Triumph Products:



12.     Triumph is also the licensor of all Triumph Products available in stores and on various e-commerce platforms, for example:



8

13.     Triumph has used the Triumph Trademarks and other trademarks for many years and has continuously sold products under the Triumph and other trademarks. As a result of this long-standing use, strong common law trademark rights have amassed in the Triumph Trademarks. Triumph's use of the Triumph Trademarks has also built substantial goodwill in and to the Triumph Trademarks. The Triumph Trademarks are famous marks and valuable assets of Triumph. Triumph Products typically include at least one of the registered Triumph Trademarks.

14.     The Triumph Trademarks have been used exclusively by Triumph, and have never been abandoned. The Trademark Registrations are valid, subsisting, and in full force and effect. The registrations of the Triumph Trademarks constitute *prima facie* evidence of their validity and of Triumph's exclusive right to use the Triumph Trademarks pursuant to 15 U.S.C. § 1057(b).

15.     Triumph has invested substantial time, money, and effort in building up and developing consumer recognition, awareness, and goodwill in the Triumph Products. The Triumph Trademarks have been continuously used, and are, and have been, the subject of continuous marketing and promotion by Plaintiff in the industry and to consumers.

16.     The success of the Triumph Products is due in large part to the marketing, promotional, and distribution efforts of Triumph. These efforts include advertising and promotion through online retailer websites, and are conducted through internet-based advertising, print, and other efforts both in the United States and internationally.

17.     The success of the Triumph Products and brand is also due to the use of high-quality materials and processes in making the Triumph Products.

18.     Additionally, Triumph owes a substantial amount of the success of the Triumph Products to its licensees, consumers, and interest that its consumers have generated.

9

19.     As a result of the efforts of Triumph, the quality of its Triumph Products, the promotional efforts for its products and designs, press and media coverage, and widespread marketing, members of the public have become familiar with the Triumph Products and Triumph Trademarks, and associate them exclusively with Triumph.

20.     Triumph Designs, Ltd. has made efforts to protect its interests in and to the Triumph Trademarks. Triumph and its licensees are the only businesses and/or individuals authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing or featuring the Triumph Trademarks, without the express written permission of Triumph. Plaintiff has not licensed or authorized Defendants to use the Triumph Trademarks.

## THE DEFENDANTS

21.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including Illinois, and within this Judicial District, through the operation of fully interactive commercial websites and online marketplace accounts operating under the Seller Aliases and Defendant Internet Stores identified on Schedule A. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit Triumph Products to consumers within the United States, Illinois, and this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

22.     The success and widespread popularity and recognition of the Triumph brand and Triumph Products has resulted in significant counterfeiting and intentional copying. Plaintiff has identified numerous Seller Aliases linked to fully interactive websites and marketplace listings on platforms which include, but are not limited to those operated on the following marketplaces: eBay,

Inc. ("eBay"), ContextLogic, Inc. ("Wish"), Amazon, Inc. ("Amazon"), Etsy, Inc. ("Etsy"), DHGate.com ("DHGate"), and AliExpress, Inc. ("AliExpress"), among others (collectively referred to herein as "Online Marketplaces"), including the Defendant Internet Stores, which are offering for sale, selling, and importing Counterfeit Triumph Products to consumers in this Judicial District and throughout the United States. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $350 billion in annual online sales.[1] According to an intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[2] Internet websites and e-commerce stores like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

23.     As recently addressed in the *New York Times* and by the U.S. Dept. of Homeland Security,  and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the above mentioned digital marketplaces, an astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[3]

24.     Upon information and belief, Defendants facilitate sales by designing their Internet stores to appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Triumph Products through the use of Triumph's Intellectual Property. The Defendant

---

[1] *See* "2020 Review of Notorious Markets for Counterfeiting and Piracy," OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Executive Office of the President. 85 FR 62006 (October 1, 2020).
[2] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).
[3] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/ files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

Internet Stores look sophisticated and perpetuate an illusion of legitimacy – they accept payment in U.S. dollars via credit cards, Western Union, and PayPal; they often include images and design elements that make it difficult for consumers to distinguish these unauthorized sites from an authorized website; they offer "live 24/7" customer service; and, they use indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

25.    Upon information and belief, Defendants also deceive unknowing consumers by using the Triumph Trademarks without authorization within the content, text, and/or metatags of their websites, in order to attract and manipulate search engines into identifying the Defendants Internet Stores as legitimate websites for authentic Triumph Products. Defendants also employ other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores show up at or near the top of relevant search results, including tactics to propel new domain names to the top of search results after others are shut down. These tactics are meant to, and are successful in, misdirecting consumers who are searching for genuine Triumph Products.

26.    Upon information and belief, Defendants operate in a collective and organized manner, often monitor trademark infringement litigation alert websites, are in continuous and active concert with one another, are in frequent communication with each other – utilizing online chat platforms and groups, and use these collective efforts in an attempt to avoid liability and intellectual property enforcement efforts.[4] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

---

[4] For this reason, Plaintiff is concurrently filing a Motion For Leave to File Certain Documents Under Seal and Temporarily Proceed Under A Pseudonym.

27.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities and other relevant information. Other Defendants use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the Seller Aliases listed in Schedule A attached hereto, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

28.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores, including, but by no means limited to: (1) virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts; (2) similarities of the Counterfeit Triumph Products, and indicia of being related to one another, suggesting that the illegal products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated; and, (3) other notable common features such as use of the same naming conventions, domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

29.     Further, illegal operators, like Defendants, typically operate multiple payment processor and merchant accounts, including but not limited to, one or more financial accounts operated through platforms such as eBay, Inc. ("eBay"), PayPal, Inc. ("PayPal"), Payoneer, Inc. ("Payoneer"), Stripe,

13

Inc. ("Stripe"), ContextLogic, Inc. ("Wish"), Amazon Payments, Inc. ("Amazon"), Etsy, Inc. ("Etsy"), and Alipay US, Inc. ("Alipay") (collectively referred to herein as "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts. Additionally, and upon information and belief, and as financial transaction logs in previous similar cases have shown, Defendants often maintain off-shore bank accounts and regularly move funds from their Payment Processor accounts to said off-shore bank accounts, outside the jurisdiction of this Court.

30.     Defendants, without any authorization or license, have knowingly and willfully infringed the Triumph Trademarks in connection with the manufacturing, advertisement, distribution, offering for sale, and sale of illegal, infringing, and counterfeit products into the United States and Illinois. Each Defendant Internet Store offers to ship to the United States, including Illinois, and, on information and belief, each Defendant has offered to sell, or has already sold, infringing products therein.

31.     In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to the Triumph brand: infringed upon and used counterfeit versions of the Triumph Trademarks; created, manufactured, sold, and/or offered to sell counterfeit products and/or products which infringe upon the Triumph Intellectual Property; used the Triumph Intellectual Property in an unauthorized manner in order to sell, advertise, describe, mislead, deceive, and trade upon the Triumph Trademarks; engaged in unfair competition; and unfairly and unjustly profited from such activities at the expenses of Triumph.

32.     Plaintiff does not yet know the full extent and identity of the channels through which Defendants source and sell the Counterfeit Products. Defendants directed, supervised, and/or controlled activity infringing on Plaintiff's Trademarks and the sale of Counterfeit Products.

Defendants have a direct financial interest in, and gain a direct financial benefit from infringing activity and realize profits from the sale of Counterfeit Products.

33. By engaging in the illegal conduct outlined herein, in addition to directly organizing and effectuating such infringing activities, each Defendant also induced, caused, and materially contributed to infringing conduct by others, including the other Defendants. There is a causal relationship between the infringing activity and the financial benefit reaped by Defendants.

34. Unless enjoined, Defendants will continue to cause irreparable harm to Triumph.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

35. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

36. This is a trademark infringement action against Defendants, based on their unauthorized use in commerce of counterfeit imitations of the federally registered Triumph Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing and counterfeit goods.

37. Without the authorization or consent of Triumph, and with knowledge of Triumph's well-known ownership rights in its Triumph Trademarks, and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the Triumph Trademarks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Triumph Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products.

38. Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Counterfeit Products to the purchasing public

in direct competition with Triumph and the Triumph Products, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Triumph Trademarks through their participation in such activities.

39.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the Triumph Trademarks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public, and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Triumph Designs, Ltd., through which Defendants make substantial profits and gains to which they are not entitled in law or equity.

40.     Defendants' unauthorized use of the Triumph Trademarks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Triumph Designs, Ltd., and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Triumph Trademarks.

41.     Defendants intentionally induce others to infringe upon Plaintiff's trademarks and/or continues to supply services with the knowledge that the recipient is using such services to engage in such trademark infringement. Defendants have the right and ability to supervise the infringing activity and have an obvious and direct financial interest in the counterfeit activity.

42.     Defendants' actions constitute willful counterfeiting of the Triumph Trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

43.     Defendants' continued intentional use of the Triumph Trademarks without the consent or authorization of Triumph Designs, Ltd., constitutes intentional infringement of Triumph's federally registered Triumph Trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

44.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss, irreparable injury, and damage to Triumph, its business, its reputation, and its valuable rights in and to the Triumph Trademarks and the goodwill associated therewith, in an amount as yet unknown. Triumph has no adequate remedy at law for this injury, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to Triumph and its valuable Triumph Trademarks.

45.     Based on Defendants' actions as alleged herein, Triumph is entitled to injunctive relief, damages for the irreparable harm that Triumph Designs, Ltd. has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as well as all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per-counterfeit mark per-type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

## COUNT II
## FALSE DESIGNATION OF ORIGIN, PASSING OFF, & UNFAIR COMPETITION
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

46.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

47.     Plaintiff, as the owner of all right, title, and interest in and to the Triumph Trademarks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

48.     Plaintiff's Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register; the Triumph Trademarks have been

continuously used and have never been abandoned; the registrations for the Triumph Trademarks are valid, subsisting, and in full force and effect; and many are incontestable pursuant to 15 U.S.C. § 1065.

49.     Defendants' promotion, marketing, offering for sale, and sale of infringing Triumph Products has created and continues to create a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or as to the origin, sponsorship, or approval of Defendants' infringing products by Plaintiff.

50.     By using the Triumph Trademarks in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

51.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

52.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, and intended to cause confusion, to cause mistake, and to deceive the purchasing public, with the intent to trade on the goodwill and reputation of Triumph, its Triumph Products, and Triumph Trademarks.

53.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Triumph by depriving Plaintiff of sales of its Triumph Products and by depriving Triumph of the value of its Triumph Trademarks as commercial assets in an amount as yet unknown.

54.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III

### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

55.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

56.     Defendants have engaged in acts violating Illinois law, including, but not limited to, passing off their unauthorized products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of Defendants' goods, thus causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Triumph Products, through Defendants' representation that Defendants' Counterfeit Products have Plaintiff's approval, when they do not.

57.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*.

58.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured monetarily. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

59.     Further, as a direct result of the Defendants' acts of trademark infringement, Defendants have obtained profits they would not have otherwise realized but for their infringement of Plaintiff's Trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Triumph Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized Triumph Product, or is not authorized by Plaintiff to be sold in connection with the Triumph Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Triumph Trademarks;

   c. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the Triumph Trademarks;

   d. further infringing the Triumph Trademarks and damaging Plaintiff's goodwill;

   e. using, linking to, transferring, selling, exercising control over the Defendant Internet Stores, Defendants' product listings, or any other domain name or online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the Triumph Trademarks;

   f. operating and/or hosting websites at the Defendant Internet Stores, and any other domain names registered to or operated by Defendants that are involved with the

distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear the Triumph Trademarks;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Online Marketplaces and Payment Processors, and any related entities, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Internet Stores, and domain name registrars, shall:

   a. disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff which bear the Triumph Trademarks, including any accounts associated with the Defendants;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which bear the Triumph Trademarks; and,

   c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3) That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4) For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered Trademarks, pursuant to 15 U.S.C. § 1114;

5) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

6) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered trademarks; and, b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

8) Any and all other relief that this Court deems just and proper.

DATED: January 27, 2022                          Respectfully submitted,

                                                 */s/ Ann Marie Sullivan*
                                                 Ann Marie Sullivan
                                                 Alison Carter
                                                 Sofia Quezada
                                                 AM Sullivan Law, LLC
                                                 1440 W. Taylor St., Suite 515
                                                 Chicago, Illinois 60607
                                                 Telephone: 224-258-9378
                                                 E-mail: ams@amsullivanlaw.com

                                                 **ATTORNEYS FOR PLAINTIFF**