# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Triumph Designs, Ltd., | |
| Plaintiff, | Case No. 1:22-cv-00506 |
| v. | |
| The Partnership and Unincorporated Associations Identified on Schedule A, | Judge: Hon. Steven C. Seeger |
| Defendants. | |

## DEFENDANT NEWTONSTEIN'S MEMORANDUM IN SUPPORT OF MOTION TO UNFREEZE ACCOUNTS IN LIGHT OF EXPIRATION OF THE APRIL 8, 2022 TRO

Defendant, Newtonstein Ltd. ("Newtonstein"), for its Memorandum in Support of its Motion to Unfreeze Accounts in Light of the Expiration of the April 8, 2022 TRO, states as follows:

**I.  INTRODUCTION**

On April 8, 2022, without notice to defendant Newtonstein Ltd. ("Newtonstein"), an *ex parte* motion for TRO was granted and a blanket injunction was issued prohibiting certain alleged infringing acts and freezing financial accounts of various defendants labeled as "The Partnerships and Unincorporated Associations Identified on Schedule A". ECF 16.  The minute entry granting the TRO stated "Temporary Restraining Order to follow" (ECF 16) but no such Order is publicly available on the docket as it is still under seal. Schedule A, which includes the list of the defendants by their online marketplace accounts and their corresponding e-commerce stores is not yet publicly available on the Court's docket as it was filed under seal.  ECF 17. Another *ex parte* motion was granted extending the TRO only until May 6, 2022 at 5:00pm. ECF 22. On May 3, 2022 plaintiff filed a motion to convert the TRO to a preliminary injunction which requests to continue the freeze on defendants' financial accounts. ECF 24.  There has been no briefing on nor any ruling on the motion to convert the TRO to a preliminary injunction and therefore the TRO has expired by its own terms.  However, Newtonstein's accounts remain frozen.  Newtonstein depends for its

business on its Fruugo account to conduct sales and to pay its international staff and vendors and from the revenues in its Fruugo account. Because Newtonstein sold only **a single key chain that might fall within plaintiff's non-specific allegations— the price of the keychain was under $29.36 gross value**, the Court should enter an order that any injunctive relief that might currently be in effect does not apply to accounts used by Newtonstein. Continuing to freeze accounts owned by Newtonstein will wreak harm upon Newtonstein, its staff, vendors and customers far outweighing the possibility that Plaintiff will be deprived of about $29.36 in potential damages.

## II. BACKGROUND

In its Complaint in this Action and in papers supporting its *ex parte* motion for Temporary Restraining Order and its Motion for Preliminary Injunction, Plaintiff claimed that there are counterfeiters eager to profit off of Plaintiff's IP, constituting an alleged "collective enterprise" and that have engaged in "significant counterfeiting and intentional copying". While maybe this is true, Newtonstein was not a part of it.

Newtonstein's Business.

Newtonstein is a global retail company that markets hundreds of thousands of non-infringing products to consumers all over the world through various online marketplaces and has offices in Delaware, United States, and in London, United Kingdom. Declaration of Priyesh Patel at ¶¶2-3 ("Patel Declaration") attached hereto as Exhibit 1. Newtonstein lists products on its various internet marketplaces that it typically sources from Asia, USA and UK. Ex. 1, Patel Decl. ¶¶4-5, 16. When a consumer orders a product, it is dropshipped by the supplier to the customer, and Newtonstein never takes possession of it. *Id.* Customers typically pay for the products using Fruugo platform. Ex. 1, Patel Decl. ¶4. Newtonstein then uses its Fruugo account to receive payments, to pay its international staff, to pay suppliers for the products it has sold to others, and to provide customers with refunds for returned or defective products. Ex. 1, Patel Decl. ¶¶4, 14, 16, 22-23. A long-term freeze on Newtonstein's Fruugo account will likely put Newtonstein out of business. Ex. 1, Patel Decl. ¶¶15, 18, 19, 21-22, 24.

Plaintiff's Generic Allegations.

Plaintiff's allegations are general and vague as the Amended Complaint states in conclusory fashion, that "Defendants, without authorization or license, have knowingly and willfully infringed Triumph Trademarks in connection with the manufacturing, advertisement, distribution, offering for sale, and sale of illegal, infringing, and counterfeit products into the United States and Illinois." Complaint at ¶30, ECF 10. There are no specific allegations against Newtonstein and no specific identification of any alleged infringing products sold by Newtonstein.

Upon receipt of the pleading, Newtonstein searched for any product sale that might fall within the allegations made by Plaintiff. Ex. 1, Patel Decl. ¶¶ 7-8. Only one product sold, a key chain sold for $29.36, was discovered. Ex. 1, Patel Decl. ¶8. That one small dollar amount product was purchased on January 17, 2022 just shortly before the Plaintiff's January 28, 2022 filing of its initial Complaint appearing to have been purchased for purposes of this litigation. Ex. 1, Patel Decl. ¶9.

**Importantly, other than one keychain there have been no other sales in Illinois or in the United States of any such product and the purchase price was less than $30.** Ex. 1, Patel Decl. ¶10. In fact, Newtonstein has sold no other such product to any other purchasers anywhere in the world. *Id.* Newtonstein has added a keyword block for the word "Triumph" which if any such listings enter the system inadvertently, they will be blocked by the keyword block filter to prevent any inadvertent sale. Ex. 1, Patel Decl. ¶12.

Newtonstein's Fruugo Accounts.

Like so many modern companies, Newtonstein's ability to accept orders and send payments using Fruugo proceeds is a critical function vital to its business. Ex. 1, Patel Decl. ¶23. Of most immediate importance is that Netwonstein uses Fruugo proceeds to pay salaries to its staff members who work from home at locations around the world. Ex. 1, Patel Decl. ¶¶ 14, 22-23. For some or all of these persons, this is their sole source of income and they do not have ability to receive payments any other way. *Id.* at 22. If Newtonstein is unable to pay its staff, they may find other work and leave Newtonstein, which could be the death knell of its profitable business. *Id.* at 15. Further, Newtonstein uses its Fruugo account to make sales and to receive funds to pay vendors

and merchants since it is widely accepted around the world. Ex. 1, Patel Decl. ¶16. And to the extent customers for whatever reason return products to Newtonstein, Newtonstein uses Fruugo to refund payments. Ex. 1, Patel Decl. ¶17. If this Court's injunction continues to prohibit Newtonstein from sourcing products or honoring its contractual commitments, this will irreparably damage Newtonstein's business. *Id.* at ¶18-24.

## III.    ARGUMENT

### A.    Legal Standard

The language of Rule 65(b)(2) and the great weight of authority support the view that 28 days is the outer limit for a TRO without the consent of the enjoined party, regardless of whether the TRO was issued with or without notice. *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 844 (7th Cir. 2012)(citing *Sampson v. Murray,* 415 U.S. 61, 86–88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Nutrasweet Co. v. Vit–Mar Enterprises, Inc.,* 112 F.3d 689, 692 (3d Cir.1997); *Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n,* 306 F.2d 840, 842–43 (2d Cir.1962); *Connell v. Dulien Steel Products, Inc.,* 240 F.2d 414, 417 (5th Cir.1957)). A party against whom a temporary restraining order has issued may reasonably assume that the order has expired within the time limits imposed by Rule 65(b) unless further proceedings occur to extend or convert the TRO. See *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 444–45, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) (defendant could not be held in contempt for violating TRO that was silent on its face as to its intended duration; without either extension of TRO or issuance of preliminary injunction, TRO could be presumed to have expired as of Rule 65(b) time limit).

### B.    Newtonstein's Assets Should be Unfrozen As The April 8, 2022 Order Expired

The April 8, 2022 *ex parte* TRO (ECF 17) froze financial accounts of defendant Newtonstein. Another *ex parte* motion was granted extending the TRO **only until May 6, 2022**

**at 5:00pm**. ECF 22. On May 3, 2022 plaintiff filed a motion to convert the TRO to a preliminary injunction which requests to continue the freeze on defendants' financial accounts. ECF 24. There has been no briefing on that motion, no hearing on that motion, and no ruling on that motion to convert the TRO to a preliminary injunction. However, Newtonstein's Fruugo account is still frozen and Newtonstein is suffering extreme prejudice and harm. See generally Ex. 1, Patel Decl. Accordingly, Newtonstein requests an Order unfreezing its Fruugo accounts.

### C. Continuing the Freeze on Newtonstein's Accounts Is Excessive

A court's authority to restrain assets before a judgment is limited. A restraint may not be imposed to preserve a money judgment, but only an equitable remedy gives grounds for such relief. *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.,* 527 U.S. 308, 331 (1999)(holding federal courts lack inherent power to issue a preliminary injunction to preserve assets to satisfy a potential money judgment). Although courts may restrain assets to preserve an equitable remedy, the scope must be limited only to what is necessary to secure the future equitable relief. See *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496-97 (4th Cir. 1999) ("This nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets."); see also *Micnerski v. Sheahan*, No. 02 C 7025, 2002 WL 31415753, at *1 (N.D. Ill. Oct. 25, 2002) (rejecting the requested restraint because "[n]one of the specific equitable relief sought" involved the assets sought to be frozen); *Coley v. Vannguard Urban Improvement Assoc., Inc.*, No. 12-CV-5565 (PKC) (RER), 2016 WL 7217641, at *2 (E.D.N.Y. Dec. 13, 2016) (collecting cases).

In the instant case, an *ex parte* freeze over all of Newtonstein's accounts is excessive and not warranted. Plaintiff has failed to allege any specific infringing product sale by Newtonstein.

Newtonstein's investigation revealed one sale of a less than $30 product cost with any reference to the word "Triumph" and has taken measures to block any such inadvertent sale in the future. Ex. 1, Patel Decl. ¶¶ 7-8, 12. Under such circumstances, any prejudgment asset restraint must be limited to the equitable remedy available to Plaintiff—namely, a disgorgement of profits under 15 U.S.C. § 1117(a). See e.g., 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:40 (5th ed. 2019) (purpose of freezing assets is to preserve "security for plaintiff's future recovery on an accounting of the counterfeiter's profits"); see also *Deckers Outdoor Corp. v. P'Ships & Unincorp'd Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013) (Chang, J.) (noting that if "a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more."); *Volkswagen AG v. DXZ Official Store*, No. 18-cv-06611, ECF No. 27, at *4 (N.D. Ill. Oct. 11, 2018) (Chang, J.) (same).

To the extent Plaintiff will respond by highlighting the prospect of statutory damages to justify the current freeze of assets, statutory damages are legal, not equitable, and thus afford no grounds for a prejudgment asset freeze. See *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283 (AJN), 2012 WL 5265727, at *4, 6 (S.D.N.Y. Oct. 24, 2012) (holding that "(1) Plaintiff is entitled to an asset freeze to preserve its right to equitable accounting, (2) the scope of the assets to be frozen for purposes of preserving this right should not extend beyond profits likely derived from the sale of counterfeit goods, [and] (3) the Supreme Court's decision in *Grupo Mexicano* precludes the Court from freezing additional assets solely to preserve a possible later award of statutory damages [which] are a remedy at law"); *Hangzhou Aoshuang E-Commerce Co., v. 008Fashion*, No. 19-cv-04565, ECF No. 244 (N.D. Ill. Jan. 17, 2020) (Pacold, J.) (refusing to freeze moving defendants' assets because freeze was not warranted to preserve remedy of an

equitable accounting of profits); *Wham-O Holding, Ltd. v. The P'ships & Unincorp'd Ass'ns Identified on Schedule A*, No. 18 C 3264, ECF No. 49, at 5:5-23 (N.D. Ill. June 12, 2018) (Shah, J.) (same); *PhD Marketing, Inc. v. Cloud Commerce Sys. Ltd.*, No. 15 CV 4702, ECF No. 49, at 2 (N.D. Ill. June 11, 2015) (Shah, J.) (same); see also *Wham-O Holding, Ltd. v. The P'ships & Unincorp'd Ass'ns Identified on Schedule A*, No. 19 CV 4983, ECF No. 30, at 22:15-24:7 (N.D. Ill. Aug. 23, 2019) (Bucklo, J.) (limiting asset freeze to $10,000 for each defendant instead of all funds in defendants' accounts); *Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F. 3d 163, 177 (3d Cir. 2017) (overturning district court's award of profits that was based on defendant's gross industry-wide sales and not limited to the infringing product, stating that such an approach "would render equitable considerations ... a nullity").

The freeze on Newtonstein's accounts should be lifted.

### D. Continuing the Freeze on Newtonstein's Accounts Is Causing Extreme Prejudice to Newtonstein

An injunction freezing Newtonstein's Fruugo account is not justified under the circumstances. Newtonstein has submitted sworn testimony that it sold a single accused product in the United States for under $29.$^{36}$, but its Fruugo accounts with combined balances of **tens of thousands of times that amount** have been frozen by this Court's injunction order. Further, maintaining the freeze on these financial accounts does nothing to prevent any irreparable harm to Plaintiff. Newtonstein has taken measures to prevent any sale of any product mentioning "Triumph". Ex. 1, Patel Decl. ¶12. Moreover, Newtonstein is a United Kingdom company with offices in Delaware and London which has retained counsel to appear in this case in the US. Ex. 1, Patel Decl. ¶2. Under these circumstances, there is no risk that Newtonstein will abscond with the $29.$^{36}$ it made from a single inadvertent and allegedly infringing sale.

The harm to Newtonstein on account of freezing Newtonstein's Fruugo account, on the other hand, could easily be fatal. If Newtonstein cannot use its Fruugo to make sales and payments for services, it cannot make payments to its staff, it cannot pay for products and it cannot perform

its contractual obligation to refund money to purchasers. Ex. 1, Patel Decl. ¶¶17-18, 23. Moreover, the harm caused to Newtonstein of depriving it of the revenues of its business are plainly not justified by the sale of a single product for less than $29.[36] Continuing to freeze Newtonstein's accounts is against the public interest. It will prevent Newtsonstein from buying and selling products to consumers, which is necessary in the free marketplace. It will deprive Newtonstein's innocent staff members of their livelihood, and customers who want to return products will be deprived of their refunds.

Counsel for Newtonstein has refused to agree to unfreeze Newtonstein's accounts despite having been informed of the less than $30 single key chain sale. Counsel for Newtonstein has attempted to negotiate a reasonable settlement with plaintiff's counsel in light of the less than $30 sale and that Newtonstein has already put in place measures to prevent any inadvertent future sale, but plaintiff's counsel has responded only with an unreasonable $50,000 demand and continues to refuse to agree to removal of the asset freeze.

## IV.    CONCLUSION

For the reasons set forth above, Defendant Newtonstein Ltd. respectfully requests that this Court enter an Order to lift the freeze on Newtonstein's Fruugo accounts in light of the May 6, 2022 expiration of the TRO, and grant such other and further relief as this Court deems proper.

Dated: May 9, 2022

Respectfully submitted,

*/s/ Jack J. Carriglio*
One of the Attorneys for Defendant,
Newtonstein Ltd.

Jack J. Carriglio
James G. Argionis
Cozen O'Connor
123 N. Wacker Drive, Suite 1800

-8-
LEGAL\57879387\1

Chicago, IL 60606
(312) 474-7900
jcarriglio@cozen.com
jargionis@cozen.com

Joseph A. Meckes
Squire Patton Boggs (US) LLP
joseph.meckes@squirepb.com

Attorneys for Defendant,
Newtonstein Ltd.

## **CERTIFICATE OF SERVICE**

I, hereby certify that on May 9, 2022, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF, which will send notification of such filing to all Counsel of Record.

*/s/ Jack J. Carriglio*
Jack J. Carriglio

LEGAL\57879387\1