IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Triumph Designs, Ltd., <br><br> Plaintiff, <br><br> v. <br><br> The Partnership and Unincorporated Associations Identified on Schedule A, <br><br> Defendants. | Case No. 1:22-cv-00506 <br><br> Judge: Hon. Steven C. Seeger |

## DECLARATION OF PRIYESH PATEL

I, Priyesh Patel, declare as follows:

1. I am the proprietor of defendant Newtonstein Ltd. and am familiar with its operations.

2. Newtonstein is in the business of selling products over the internet to consumers worldwide. Newtonstein is a United Kingdom business and has offices in Delaware, United States, and in London, United Kingdom. Newtonstein employs staff in over 10 countries around the world.

3. I founded Newtonstein in January of 2015 with my brother. Newtonstein is currently marketing hundreds of thousands of products on its website and on dedicated retailer pages on Fruugo. Since its founding, Newtonstein has sold over 50,000 unique products to consumers on all five continents involving worldwide shipments to numerous consumers.

4. Newtonstein uses Fruugo to conduct its business. Newtonstein receives payments for goods through Fruugo and then pays its international staff and suppliers from its proceeds. Since its founding, Newtonstein has received just over $371,145 in revenue through Fruugo and has paid its staff and suppliers about as much from Fruugo proceeds as a trusted international marketplace and sales partner. Newtonstein relies on Fruugo for liquidity and will have difficulty paying its staff if funds in its Fruugo account are not available to pay its staff in the coming weeks.

**EXHIBIT 1**

5. Newtonstein's business model is to source products in Asia, UK and the USA, which it then markets online. Newtonstein never actually takes possession of the products, but rather causes them to be drop shipped from the suppliers to consumers or other buyers around the world.

6. Newtonstein respects the intellectual property rights of others and it is Newtonstein's policy to market only non-infringing products. If Newtonstein receives a notice that any product infringes another person's patent, trademark or intellectual property, it will suspend sales while it conducts an investigation. If there is a credible claim of infringement, Newtonstein will cease permanently to market that product.

7. On May 3, 2022, Newtonstein received pleadings from this case. Newtonstein was not aware that any product with Triumph on it was being sold among the hundreds of thousands of products that it markets.

8. While the complaint in this matter did not allege any specific acts or sale by Newtonstein, I conducted an investigation to determine what Plaintiff could possibly be accusing Newtonstein of doing wrong relative to the many products it markets. I searched for any product sale that might fall within the allegations made by Plaintiff and found only one product sold, a key chain sold for $29.36, that referenced "Triumph." The item was purchased from a supplier at $16.08 and shipped direct from supplier to the order placed by the client.

9. That one small dollar amount product was purchased on January 17, 2022 just shortly before the Plaintiff's January 28, 2022 filing of its initial Complaint and appears to have been purchased for purposes of this litigation.

10. Other than the one keychain, there have been no other sales in Illinois or in the United States of any such product. My investigation revealed that Newtonstein has sold no other such product to any other purchasers anywhere in the world.

11. The single keychain was purchased from a supplier and shipped to the customer that placed the order on Newtonstein's platform.

12. After searching and discovering this one purchase, Newtonstein has removed any listings and added a keyword block for the word "Triumph" which if any such listings enter the system inadvertently, they would be blocked by the keyword block filter.

13. Newtonstein has further committed not to ever list such products.

14. Newtonstein's ability to accept and send payments using Fruugo is a critical function vital to its business. Netwonstein uses Fruugo proceeds to pay salaries to its staff members who work from home at locations around the world, and continue to function in business by paying for its operating costs. For some or all of these persons, this is their sole source of income and they do not have ability to earn a living any other way as permanent employees.

15. If Newtonstein is unable to pay its staff, they may find other work and leave Newtonstein, which could force Newtonstein out of business.

16. Newtonstein uses its Fruugo account to sale its products sourced from suppliers, receive proceeds and pay vendors and merchants around the world.

17. To the extent customers return products to Newtonstein, Newtonstein uses Fruugo to refund payments.

18. Any continued prohibition of Newtonstein from sourcing products or honoring its contractual commitments, will irreparably damage Newtonstein's business.

19. Fruugo retains 4 to 5 weeks of company capital prior to pay out. A freeze on payment has left us without these vital funds already held for a long period of time, requiring further external cashflow to sustain operations without access to regular weekly payments, which is not feasible and leaves us with a time sensitive existential threat.

20. For the single keychain revealed by my investigation, Newtonstein received a single payment of $29.36.

21. The Court's Order freezing Newtonstein's Fruugo account is causing immediate and direct harm to Newtonstein far in excess of the $29.36 gross payment it received from marketing a key chain.

22. Newtonstein uses its funds from the Fruugo account to pay its staff members who work from home on a frequent basis. These persons reside in various countries around the world, and many of them rely on these payments as their only source of income. Payments that we owe our staff will continue to accrue, and if we are unable to pay our staff, this poses an existential threat to our company as we will be branded as a company that does not pay its staff on time. This harm could easily force us to cease operations as we cannot function without our staff.

LEGAL\57877609\1

23. Newtonstein also uses Fruugo to deal with merchants and suppliers as it is the most convenient and internationally recognized marketplace sales partner which is used by many buyers. Fruugo retain over 4 weeks of our working capital on a rolling basis and hence we are without this cash flow for 4 – 5 weeks at a time. The current freeze leaves us without regular payments, a cash flow deficit and further capital needed to continue fulfilling our commitments whilst this matter is resolved, hence an existential threat to our company. We thus use Fruugo proceeds as disbursed only once a week for various activities as part of our regular business operations including running costs. This includes and is not limited to:

- Paying for the various subscriptions to systems and software that Newtonstein needs for its business to function;
- Receiving payments from ongoing orders placed on our website. Customers do not want to usually pay using any other means due to the convenience and protections Fruugo offers;
- Making supplier payments quickly and securely for orders received on Fruugo. The loss of timely payments of our held funds has caused us significant difficulties in trying to pay suppliers on demand and is still a major logistical issue including losing money on currency exchange rates from alternate temporary arrangements; and
- Sending customer refunds where necessary to remedy warranty claims;
- Paying staff for moneys owed.

24. It is both critical that we have access to these funds and that we have the ability to continue selling on Fruugo.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: May 9th, 2022

_____
Dr. Priyesh Patel

-4-
LEGAL\57877609\1